## A05A1750. KELLY v. THE STATE.
(627 SE2d 458)

BERNES, Judge.

A Burke County jury found Terry Lorenzo Kelly guilty of involuntary manslaughter and possession of a firearm during the commission of a felony. Kelly appeals from the denial of his motion for new trial, challenging the sufficiency of the evidence to support his convictions and the trial court's denial of his motion to suppress his custodial statement. Finding no error, we affirm.

1. When reviewing a criminal defendant's challenge to the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the verdict. *Standfill v. State*, 267 Ga. App. 612 (600 SE2d 695) (2004). While doing so, we do not weigh the evidence nor decide the credibility of witnesses. Id.

So viewed, the evidence shows that 16-year-old Vonteko Devine was shot in the upper thigh on the night of March 20, 2002, and died two days later as the result of the gunshot wound. Jamie Jones, a friend of both Kelly and Devine, witnessed the shooting. He saw Kelly "pull a 38 out his back pocket," pull the gun's handle back and then make a downward motion, after which the gun fired injuring Devine. Jones then saw Kelly flee from the scene. Kelly contacted Jones twice after the shooting and asked him to lie and to implicate another person as the perpetrator.

Kelly was interviewed by a Georgia Bureau of Investigation (GBI) agent shortly after Devine's death. He initially denied any involvement in the shooting, but after the agent pointed out the implausibility of his alibi, he admitted that he had shot Devine while playing a game of "Russian Roulette." At trial, Kelly testified and repudiated his pretrial statement, casting blame for the shooting upon another person.

Involuntary manslaughter is an unintentional homicide. See *Coggins v. State*, 227 Ga. 426 (181 SE2d 47) (1971). Under OCGA § 16-5-3 (a), a person is guilty of the offense of involuntary manslaughter by intentionally committing an unlawful act which causes the death of another human being without any intention of doing so. Here, the jury was authorized to conclude that Kelly's reckless conduct — his participation in a game of Russian Roulette with a loaded handgun — caused the death of Devine. See *Smith v. State*, 234 Ga. App. 314, 315 (1) (506 SE2d 659) (1998). "It [was] the jury's prerogative to choose what evidence to believe and what to reject." *Trammell v. State*, 253 Ga. App. 725, 726 (1) (560 SE2d 312) (2002). From the evidence adduced at trial, any rational trier of fact could have found Kelly guilty beyond a reasonable doubt of the offenses of involuntary manslaughter and possession of a firearm during the commission of a felony. See *Anderson v. State*, 258 Ga. 715, 716 (5)

(373 SE2d 745) (1988) (involuntary manslaughter committed by unlawful act of intentionally pointing a gun at victim).

2. Kelly contends the trial court erred in allowing his custodial statement into evidence. We disagree. "In determining the admissibility of a statement, a trial court must find by a preponderance of evidence that the statement was made knowingly and voluntarily. Unless clearly erroneous, factual and credibility determinations made at a *Jackson-Denno* hearing must be accepted by appellate courts." (Citations omitted.) *Wallace v. State*, 267 Ga. App. 801, 807 (6) (600 SE2d 808) (2004).

Evidence adduced at the hearing showed that while Kelly was being held on unrelated charges, a GBI special agent interviewed Kelly at the jail for approximately 45 minutes. Prior to the interview, the agent advised Kelly of his *Miranda* rights. Kelly thereafter executed a written waiver of his rights and agreed to speak with the agent.

The agent testified at the hearing that Kelly appeared to understand his rights, did not appear to be under the influence of alcohol or drugs, and responded appropriately to the questions asked of him. The agent further testified that no promises or threats were made to induce Kelly's statement, a fact to which Kelly agreed in his testimony at trial.[1]

The agent explained that Kelly had initially denied any involvement in the shooting, but when confronted with inconsistencies regarding his whereabouts, admitted to shooting Devine while playing a game of "Russian Roulette" and then gave a taped statement to that effect. After hearing the testimony of the agent and listening to the taped statement, the trial court found by a preponderance of the evidence that Kelly "had been advised of each of his *Miranda* rights, that he understood them, that he voluntarily waived them, and that he thereafter gave his statement freely and voluntarily without any hope of benefit or fear of injury."

Kelly contends that his statement was involuntary because he had been in custody for three days at the time the statement was given and had not been allowed to speak with his relatives. However, Kelly presented no evidence of this allegation at the *Jackson-Denno* hearing. Thus, in light of the agent's uncontradicted testimony, we cannot say that the trial court clearly erred in its findings and decision to admit the challenged statement. See *Adams v. State*, 264 Ga. 71, 76-77 (10) (440 SE2d 639) (1994). This enumeration is without merit.

---

[1] Kelly also agreed that he had been advised of his rights and agreed to speak to the agent without counsel.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 28, 2006.

*Samuel W. Cruse*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.